**Drayton MILLER, et al., Plaintiffs,**

v.

**THERMARITE PTY. LTD.,
et al., Defendants.**

Civ. A. No. 91–0892–P–M.

United States District Court,
S.D. Alabama, S.D.

May 20, 1992.

Broox G. Holmes and Edward A. Dean, Mobile, Ala., for plaintiffs.

K.W. Michael Chambers, Patrick H. Sims, Mobile, Ala., Jerre B. Swann and Daniel E. Epstein, Atlanta, Ga., for defendants.

ORDER ADOPTING AND ELABORAT-ING ON MAGISTRATE JUDGE'S RE-PORT AND RECOMMENDATION

PITTMAN, Senior District Judge.

This case was originally filed in Mobile Circuit Court and removed on the basis of diversity jurisdiction to this court on November 1, 1991. The plaintiffs, all citizens of Alabama, have filed a motion to remand on the basis that complete diversity is lack-.ing because they contend that defendant George Barrett is also a citizen of Alabama for purposes of diversity.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and this court's standing order, the motion to remand was referred to the Magistrate Judge, who recommends that the motion be denied. This court agrees with the Magistrate Judge.

Mr. Barrett is an alien with Australian and British citizenship who now resides in Mobile. In 1988, the Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, 102 Stat. 4642 [hereinafter "JIAJA"], amended the diversity statute to provide that "[f]or the purposes of this section . . ., an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which the Alien is domiciled." 28 U.S.C. § 1332(a). Plaintiffs argue that Barrett's connections with the state of Alabama,[1] coupled with his intent to remain in Alabama for an indefinite period of time, make Barrett a

---

1. Specifically, plaintiffs state that Mr. Barrett and his wife now reside in Mobile in a house that he is attempting to purchase, that he maintains a bank account in Mobile, that he has purchased and registered an automobile in Alabama, that he has an Alabama driver's license, and that he has obtained a social security number.

permanent resident of Alabama. Therefore, they argue that he should be deemed a citizen of Alabama for diversity purposes, thereby causing a lack of complete diversity in this case.[2]

Defendant Thermarite argues that "an alien admitted for permanent residence" means someone with the immigration status of permanent resident, i.e., an alien with a "green card." Thermarite argues that Mr. Barrett should not be deemed a citizen of Alabama under § 1332 because he does not hold such a status. It is undisputed that his immigration status is nonimmigrant temporary worker and that he does not hold a green card.

The Magistrate Judge agrees with the defendant, and states in his Report and Recommendation that, with respect to the plaintiffs' argument:

> a better reasoned determinant of permanent residency is the immigration status of the alien. Specifically,

>> it is clear that the statute affects only the status of those aliens with "green cards"—admitted to the United States for permanent residence. Thus, aliens present in this country on any lesser status will still be considered aliens, able to invoke alienage jurisdiction against a citizen of a state or against the state itself.

> 1 **Moore's Federal Practice** ¶ 0.75[1.–5] at p. 800.56 (1992). Two courts have taken this approach in determining diversity questions. *See Iscar, Ltd., v. Katz,* 743 F.Supp. 339 (D.N.J.1990); *Kristensen v. deDampierre,* 1990 WL 103957 (S.D.N.Y. July 19, 1990).

>> Defendants point to Barrett's inability to obtain permanent residency through the U.S. Immigration and Naturalization Service (Doc. 23, Exhibits B and C). These documents suggest that [Barrett] is here only on a temporary basis through July 24, 1993. If Barrett's status is temporary, he is not a permanent resident.

Therefore, it is recommended that Plaintiffs' Motion to Remand be denied (Doc. 11).

Doc. 30 at 2–3. The plaintiffs object to this portion of the Magistrate Judge's Report and Recommendation. Plaintiffs argue that:

> It makes absolutely no sense that a person can live and work in Mobile for years, get the protection of Mobile and Alabama laws, educate his children here, pay taxes, own cars and conduct his affairs as any other citizen of Mobile, and yet have the permanent right to invoke diversity jurisdiction at his whim. The Court should not adopt a litmus test approach to the diversity statute, requiring a foreign citizen to actually hold a Green Card before he is considered a resident of this State. Instead, the Court should look to whether the person is admitted to the United States with the intention to remain here permanently and, at the same time, objectively manifesting that intention in every possible way. *See Farrell v. Ashton,* 1991 WL 29261 (S.D.N.Y. February 28, 1991).

Doc. 31 at 2–3.

Initially, plaintiffs' reliance on *Farrell* is inappropriate. In *Farrell,* the issue was where defendant Roy Ashton was domiciled; it was undisputed that Mr. Ashton "was *admitted* to the United States *as a permanent resident alien* on May 19, 1963." 1991 WL 29261 at *1. In this case, no one disputes that Mr. Barrett is domiciled in Mobile; rather, the narrow issue in this case is whether he is "an alien admitted to the United States for permanent residence."

The broader issue here in question is one of statutory construction. This court must decide what the Congress intended by the use of the term "an alien admitted to the United States for permanent residence." 28 U.S.C. § 1332(a). "As in all cases involving statutory construction, '[the] starting point must be the language employed

---

**2.** It is uncontested that the other defendant in this case, Thermarite Pty. Ltd., is a corporation organized under the laws of Australia. Its principal place of business is also in Australia.

Thermarite removed the action, with Mr. Barrett's consent, and Thermarite filed the memorandum in opposition to plaintiff's motion to remand.

by Congress' and [the court] assume[s] 'that the legislative purpose is expressed by the ordinary meaning of the words used.' Thus, 'absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive.'" *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (citations omitted).

When interpreting what Congress intended by the use of a particular phrase in a particular context in which the phrase is not clearly defined, the court should look for guidance from other contexts in which the phrase is used. If the particular phrase relates to the same subject matter in both contexts, then the clear implication is that the phrase is intended to have the same meaning in both contexts.

With regard to the phrase "admitted to the United States for permanent residence," the court notes that the phrase is not defined within the context of 28 U.S.C. § 1332(a)(4). However, in title 8 of the *United States Code*, entitled "Immigration and Nationality," the phrase "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws...." 8 U.S.C. § 1101(a)(20). Mr. Barrett has not been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws: it is undisputed that Mr. Barrett's status under the immigration laws is nonimmigrant temporary worker.

Both 28 U.S.C. § 1332(a)(4) and 8 U.S.C. § 1101(a)(20) involve the subject of aliens, although § 1332 is in the context of diversity jurisdiction and § 1101 is in the context of immigration law. Because both § 1332(a)(4) and § 1101(a)(20) involve the same subject, and because the diversity statute uses substantially the same language that is used and defined in the immigration statute, this court is persuaded that Congress intended the phrase "admitted to the United States for permanent residence" in 28 U.S.C. § 1332(a)(4) to have the same meaning as the phrase "lawfully admitted for permanent residence" in 8 U.S.C. § 1101(a)(20).

Plaintiff has offered no evidence or persuasive argument that these two statutes are not *in pari materia* and should not be construed together. The plaintiff's argument that it makes no sense that a person can live in a state and yet invoke diversity jurisdiction simply because the person does not hold permanent resident status should be directed not to this court but to the Congress that used well defined language from the immigration law to carve out an exception to federal alienage jurisdiction.

This court holds that George Barrett is not an alien admitted for permanent residence and therefore is not to be deemed a citizen of the state in which he is domiciled for diversity purposes. Thus, it is ORDERED, ADJUDGED, and DECREED that the Report and Recommendation of the Magistrate Judge and this order are ADOPTED as the opinion of this court, and plaintiffs' motion to remand be and is hereby DENIED.

## REPORT AND RECOMMENDATION

MILLING, United States Magistrate Judge.

This matter was referred to the Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), on the Motion to Remand filed by Plaintiffs in this action (Doc. 11). Jurisdiction has been invoked in this Court under 28 U.S.C. § 1332. It is recommended that Plaintiffs' Motion to Remand be denied.

The question in this case is whether the requirements of diversity have been met. Apparently, the "the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs." 28 U.S.C.S. § 1332(a) (Law Co-op. Supp.1991). The question is whether all the plaintiffs are diverse from all the defendants. *See* 28 U.S.C. § 1332; *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

All of the Plaintiffs are Alabama citizens (Docs. 1 and 11). Defendant Thermarite is a corporation organized under the laws of

Australia; its principal place of business is also in Australia. *Id.* The problem arises with Defendant Barrett, a citizen of the United Kingdom and Australia who resides in Mobile.

The dilemma is presented because of an amendment to the diversity statute.[1] Specifically, the law states that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled." 28 U.S.C.S. § 1332(a) (Law Co-op. Supp.1991). The amendment "destroy[s] diversity in cases involving American citizens and permanent resident aliens domiciled in the same state." 13B Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3604 (Supp.1991); *see also* 1 Moore's Federal Practice ¶ 0.75[1.–5] at p. 800.55 (1992).

The query before the Court is what makes an alien a permanent resident. Because the amendment is fairly new, there is little in the way of judicial interpretation.[2]

Plaintiffs maintain that Barrett is a permanent resident because he has lived in Mobile continuously for almost two years, has purchased a home and put a phone in it, has purchased a car and obtained a driver's license, has accepted a job contemplating long-term employment, and obtained a social security number (Doc. 11, Exhibits A, D, E, F, and G). Plaintiffs also point to Barrett's expressed desire to remain in Mobile and work (Doc. 11, Exhibits B and C). Only one court, in *Farrell v. Ashton*, 1991 WL 29261 (S.D.N.Y. February 28, 1991), takes the "contacts" approach encouraged by Plaintiffs.

However, a better reasoned determinant of permanent residency is the immigration status of the alien. Specifically,

it is clear that the statute affects only the status of those aliens with "green

cards"—admitted to the United States for permanent residence. Thus, aliens present in this country on any lesser status will still be considered aliens, able to invoke alienage jurisdiction against a citizen of a state or against a state itself.

1 Moore's Federal Practice ¶ 0.75[1.–5] at p. 800.56 (1992). Two courts have taken this approach in determining diversity questions. *See Iscar, Ltd. v. Katz,* 743 F.Supp. 339 (D.N.J.1990); *Kristensen v. deDampierre,* 1990 WL 103957 (S.D.N.Y. July 19, 1990).

Defendants point to Barrett's inability to obtain permanent residency through the U.S. Immigration and Naturalization Service (Doc. 23, Exhibits B and C). These documents suggest that Plaintiff is here only on a temporary basis through July 24, 1993. If Barrett's status is temporary, he is not a permanent resident.[3]

Therefore, it is recommended that Plaintiffs' Motion to Remand be denied (Doc. 11).

The attached sheet contains important information regarding objections to this Recommendation.

Done this 13th day of March 1992.

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT

1. *Objection.* Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the

---

1. Judicial Improvements and Access to Justice Act, Act of Nov. 19, 1988, Pub.L. 100–702, 102 Stat. 4642.

2. *Arai v. Tachibana,* 778 F.Supp. 1535 (D.Haw.1991), provides an excellent review of the legislative process leading to the amendment though it fails to address the query here.

3. Though Plaintiff argues that "if it looks like a duck, quacks like a duck and waddles like a

duck—it is a duck" (Doc. 25, p. 3), it appears to the Court that it is a platypus. *Webster's Ninth New Collegiate Dictionary* (1985), at p. 901 defines *platypus* as "a small aquatic oviparous mammal of southern and eastern Australia and Tasmania that has a fleshy bill resembling that of a duck, dense fur, webbed feet, and a broad flattened tail."

recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir.1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in Local Rule 26(4)(b), which provides that:

Any party may object to a magistrate judge's proposed findings, recommendations or report made under 28 U.S.C. § 636(b)(1)(B) within ten (10) days after being served with a copy thereof. **The appellant shall file with the Clerk, and** *serve on the magistrate judge* and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his discretion or where required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

A Magistrate Judge's recommendation cannot be appealed to a Court of Appeals; only the District Judge's order or judgment can be appealed.

2. *Transcript (applicable Where Proceedings Tape Recorded).* Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review. Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required be-

fore the United States will pay the cost of the transcript.